Dear Superintendent Picard:
I am in receipt of your request for an Attorney General opinion concerning Act 1295 of the 1999 Regular Session which enacts Subpart E of Part II-A of Chapter 1 of Subtitle 1 of Title 39 of the Louisiana Revised Statutes of 1950 to be comprised of R.S. 39.98.1 through 98.5. In your request you have indicated that you are concerned with Section 98.3 pertaining to appropriations from the Health Excellence Fund, the Education Excellence Fund, and the TOP'S Fund.
You have indicated that the Department of Education is currently drafting grant applications for the allocation of the Education Excellence Fund dollars to the local school districts, independent public schools (charter schools) and approved non-public schools. Specifically, you are requesting an opinion as to whether the time period for the plan required to be submitted pursuant to Act 1295 by the schools is one year. Additionally, by telephone you inquire whether the funds that are requested in the prioritized plan submitted have to be used during the year in which they are appropriated. Act 1295 98.3C(7) and (9) states the following:
 (7) Each recipient school or school system shall annually prepare and submit to the state Department of Education, hereinafter the department, a prioritized plan for expenditure of funds it expects to receive in the coming year from the Education Excellence Fund. The plan shall include performance expectations to ensure accountability in the expenditure of such monies. The department shall review such plans for compliance with the requirements of this Paragraph and to ensure that the expenditure plans will support excellence in educational practice. No funds may be distributed to any school system until its plan has been approved by the department and by the appropriate standing committees of the legislature.
 (9) The treasurer shall maintain within the state treasury a record of the amounts appropriated and credited for each entity through appropriations authorized in this Subsection and which remain in the state treasury. Notwithstanding any other provisions of this constitution to the contrary, such amounts, and investment earnings attributable to such amounts shall remain to the credit of each recipient entity at the close of each fiscal year.
In your first question, you ask whether the period for the plan that is required to be submitted pursuant to Act 1295 by the schools is one year or whether it could be for some other period of time. Act 1295 references the fiscal year several times. Therefore, the annual plan must coincide with the fiscal year which begins July 1 of each year and ends June 30 of the year following. (See LSA-R.S. 39:53(D)). Additionally, the appropriations are for a 12 month period and should coincide with the plan.
It appears that the Department makes reference to the January payment as a reason to alter the plan duration from a fiscal year. It should be pointed out that the January payment is only relevant for the first three years and beginning with FY 03-04, the revenues available for credit to the schools and school systems will rely on earnings which will be earned throughout the year, not January. (See the Master Settlement Agreement IX in the case Richard P. Ieyoub, Attorney General, ex rel. State ofLouisiana v. Phillip Morris, Incorporated, et al Section B which pertains to initial payments and Section C which pertains to the annual payments.) The Treasury Department has indicated that they will provide a schedule or policy on the frequency with which the earnings may be drawn.
Depending on the rules and regulations developed by the Department of Education, and with due consideration of the non-supplanting language in the law, a school or school system might incur expense prior to January and then reimburse its general fund with Education Excellence Funds. In this way, schools and school systems would not have to delay programs until January. However, schools and school systems should be made cognizant that they are responsible for any expenditures which are greater than the amount of Education Excellence Funds actually received by the Treasury department for distribution, or for expenditures made pursuant to a plan which is not approved by the department and by the appropriate standing committees of the legislature. The Treasurer, as recipient of the Tobacco Settlement Funds, can only release funds to schools and school systems that are actually available and the amount available for distribution will probably be different than appropriated.
The annual plan may include long-range planning which would illustrate how the school or the school system will utilize funds in future fiscal years. Long-range planning is important for entities receiving funds whether or not it is submitted to the department as the amount allocated to each entity will vary annually. (See Act 1295 98.1A(4)). Long-range planning will ensure that public school systems will anticipate this change in revenues and avoid budgetary problems when these changes occur.
In your second question you ask whether the funds that are requested in the prioritized plan submitted have to be used during the year they are appropriated. Section 9 indicates that the funds "shall remain to the credit of each recipient entity at the close of each fiscal year." Therefore, this provision indicates that the funds allocated to a school during a given year do not have to be used during the fiscal year in which they are allocated.
I hope this opinion has sufficiently addressed your concerns. If I can be of further assistance to you, please let me know.
Very truly yours,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: _______________________________ BETH CONRAD LANGSTON ASSISTANT ATTORNEY GENERAL
RPI/BCL/sc
a:\00-282.op